**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| YANIRA VELARDO and | : | Civil No. 3:18-CV-1885 |
| NAKIA VELARDO, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | (Judge Mariani) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| EDWARD LEWKO, et al., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

I. **Introduction**

This case, which comes before us for consideration of a motion to dismiss, involves a September 28, 2016 incident in which police allegedly entered the home of Yanira Velardo at 2:00 a.m. without a warrant searching for a criminal suspect. Inside the home, Velardo confronted the officers demanding that they produce a warrant before searching her home in the early morning hours. This encounter then swiftly escalated to physical violence, and after a scuffle between Velardo; her daughter, Nakia; and police, Velardo was arrested for obstruction of justice. The authorities then compounded those charges after Velardo refused to plead guilty or waive her right to a preliminary hearing. Ultimately, all of the charges lodged against Velardo were either dismissed or resulted in not guilty verdicts.

It is against the backdrop of these well-pleaded facts that Velardo and her daughter bring this federal civil rights lawsuit. The defendants—who are alleged to have made a warrantless entry into Velardo's home at 2:00 a.m., forcibly restrained Velardo when she protested their warrantless entry, and then lodged criminal charges against Velardo which resulted in dismissals or acquittals—now move to dismiss this complaint, alleging that Velardo has completely failed to state a claim upon which relief may be granted.

For the reasons set forth below, with our review currently limited to an assessment of the plaintiffs' well-pleaded allegations, we disagree. Therefore, we recommend that this motion to dismiss be denied.

## II.    <u>Statement of Facts and of the Case</u>

The well-pleaded facts set forth in the Velardos' complaint, which guide us in evaluating the legal sufficiency of the plaintiffs' claims, recite that:

> 11. On September 28, 2016, Officers Peter Cordaro and Edward Lewko initiated criminal proceedings against Yanira Velardo by seizing her, arresting her and filing a criminal complaint charging her with one count of obstruction of justice.
>
> 12. According to the affidavit of probable cause sworn to by Officers Cordaro and Lewko, the charges relate to an incident on September 28, 2016 wherein Yanira Velardo allegedly physically obstructed officers

from arresting her daughter, by stepping in between them and pushing Officer Maivaun Houssein.[1]

13. The arrest of Yanira Velardo's daughter took place at Yanira Velardo's home at 1:55 a.m., without a warrant. Nakia Velardo was also a resident of that same home, and also had a privacy interest in the home.

14. Yanira Velardo repeatedly asked officers for a warrant if they wished to come in her home or arrest her daughter. Defendants did not have an arrest warrant or any warrant permitting entry into Yanira Velardo's home.

15. Defendant Lewko testified that the force he knocked on the door with was enough force to actually knock the door open.

16. Yanira Velardo came out of her bedroom and found her front door already opened by police, who could not and would not produce a search or arrest warrant.

17. Defendant Lewko testified that the officers were looking for another man who went by the name "Dinero" and that was the real reason they went to the house.

18. Defendant Lewko alleges that he identified "Dinero" from his J-Net photo from his police vehicle while traveling at a normal rate of speed past the home of Yanira Velardo, in the dark at 1:30 a.m. According to Defendant Lewko, "Dinero" is a dark-skinned black male at 1:30 a.m. and was allegedly, according to Officer Lewko, standing outside Yanira Velardo's home.

19. Defendant Lewko had an alleged victim in his car who was intimate with "Dinero." She did not identify the black male standing outside

---

[1] At her preliminary hearing, the charges against Ms. Velardo's daughter, Ayana Velardo, were withdrawn by the same officers involved in this arrest.

Yanira Velardo's house as "Dinero" but defendant Lewko supposedly did.

20. The man named "Dinero" was not at Yanira Velardo's home, and when police searched her home they only found three females and small children.

21. After repeated requests to see a warrant by Yanira Velardo, officers finally pushed their way into her home, without a warrant or consent, and attempted to arrest her daughter. In the process, they used force on Yanira Velardo, throwing her to the ground, putting a knee in her back and arresting her. All the above was done at 1:55 a.m. without an arrest warrant, search warrant, or any exigency at all.

22. The police officers lacked the necessary warrant, consent, or exigency to enter Yanira Velardo's home at 2 a.m.

23. Defendants charged Yanira Velardo with crimes. Originally, Yanira Velardo was only charged with one count of obstruction of justice. Yanira Velardo refused the Commonwealth's request to waive her preliminary hearing or plead guilty, and decided to have a hearing in front of Magisterial District Judge Rick Cronauer. Because Yanira Velardo refused to waive her constitutional rights and rights under the Pennsylvania Rules of Criminal Procedure, defendants added a charge of resisting arrest at the start of that hearing.

24. Yanira Velardo filed a Habeas Corpus motion in the Luzerne County Court of Common Pleas. The Honorable Judge Joseph F. Sklarosky, Jr. dismissed the charge of resisting arrest for lack of probable cause or a prima facie case.

25. Yanira Velardo ultimately went to trial on the obstruction of justice charge and was found not guilty.

(Doc. 1, ¶¶ 11-25.)

Based upon these allegations relating to the warrantless entry into Velardo's

home, her forcible restraint and arrest by police inside her home, and the subsequent

meritless prosecution of Velardo, Yanira and Nakia Velardo have filed a 9-count civil complaint against the three arresting police officers, Edward Lewko, Maivaun Houssein, and Peter Cordaro. The first four counts of this complaint allege federal civil rights violations under the Fourth and Fourteenth Amendments, and specifically bring claims of false arrest, malicious prosecution, use of excessive force, failure to intervene, and conspiracy to violate the civil rights of the plaintiffs. (Id., Counts I-IV.) Counts five through nine of the complaint, in turn, allege the state law analogues to many of these federal civil rights claims, including assault, battery, false arrest and false imprisonment, intentional infliction of emotional distress, and trespass. (Id., Counts V-IX.)

The defendants have moved to dismiss this complaint in its entirety, arguing that each of these nine counts fails as a matter of law, and further asserting that the defendants are entitled to qualified immunity from damages on the plaintiffs' federal civil rights claims. (Doc.10.) This motion to dismiss is fully briefed and is therefore ripe for resolution. For the reasons set forth below, it is recommended that the motion to dismiss be denied.

## III. <u>Discussion</u>

### A. <u>Rule 12(b)(6) – The Legal Standard</u>

The defendants have moved to dismiss this complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides for dismissal when

a complaint "fail[s] to state a claim upon which relief can be granted." With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips [v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S. Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of</u>

Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

7

Id. at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

Two years after Fowler, the Third Circuit further observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. (1955)). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts

"merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id.

Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also, U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir.

2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment."). However, the court may not rely on other parts of the record in determining a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien &Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

## B. This Complaint is Not Subject to Dismissal as a Matter of Law

### 1. The Complaint Alleges Sufficient Facts to Withstand Dismissal

In their motion to dismiss, the defendants raise a number of threshold issues which initially warrant brief consideration. First, the defendants contend as a general matter that the complaint fails because it lacks sufficient specificity. (Doc. 12, p. 4.) We disagree. Recognizing that "[a] complaint satisfies the plausibility standard [prescribed by Rule 12(b)(6)] when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' " Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), we believe that the detailed factual recital in this complaint plainly states facts which, if proven, would plausibly support the plaintiffs' legal claims. Therefore, this complaint is not subject to dismissal as unduly vague.

### 2. The Complaint Does Not Assert a Fourteenth Amendment Claim Separate and Apart from the Fourth Amendment Claims Made by the Plaintiffs

The defendants' motion to dismiss also asserts that the plaintiff may not bring some general freestanding Fourteenth Amendment claims against these defendants because the actions of the police officers are subsumed by a more specific provision of the Bill of Rights, the Fourth Amendment. See Albright v. Oliver, 510 U.S. 266, 274, 114 S. Ct. 807, 813, 127 L. Ed. 2d 114 (1994). We agree, but note that as we construe the plaintiffs' complaint, it is not asserting some general Fourteenth Amendment claim. Rather, the gist of the Velardos' constitutional tort claims involve alleged violations of the Fourth Amendment, which has been selectively incorporated and applied to local police officers through the Fourteenth Amendment. Viewed in this light, there are no general freestanding Fourteenth Amendment claims asserted by the plaintiffs independent of their Fourth Amendment claims, and accordingly there are no such claims to dismiss.

### 3. The Plaintiffs' Fourth Amendment Claims and Their State Law Analogues Are Not Subject to Dismissal on the Pleadings

Focusing then upon the plaintiffs' Fourth Amendment claims and their related state law analogues, while the defendants' motion to dismiss independently challenges each of the nine counts set forth in the Velardos' complaint, for the most part these defense arguments share a common legal and factual theme, the assertion

that the police conduct on September 28, 2016, was so objectively reasonable that it did not in any way offend the Fourth Amendment. Thus, the motion to dismiss, and the plaintiffs' response to that motion, in the first instance call upon us to consider this cardinal provision of the Bill of Rights, which provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

Broadly speaking, the Fourth Amendment imposes two requirements on law enforcement. First, it forbids unreasonable searches and seizures. In addition, the Fourth Amendment prescribes the requisites for a valid warrant, noting that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." As the text of the Fourth Amendment implies, in assessing the reasonableness of a search for purposes of the Fourth Amendment, there is a strong constitutional preference for searches conducted pursuant to search warrants. As the Supreme Court has noted:

> Although the text of the Fourth Amendment does not specify when a search warrant must be obtained, this Court has inferred that a warrant must generally be secured. "It is a 'basic principle of Fourth Amendment law,' " we have often said, " 'that searches and seizures inside a home without a warrant are presumptively unreasonable.' "

Kentucky v. King, 563 U.S. 452, 459, 131 S. Ct. 1849, 1856, 179 L. Ed. 2d 865 (2011) (quoting Brigham City v. Stuart, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006)).

This principle applies with particular force to searches conducted inside a person's home. The home holds a special status under the Fourth Amendment. Thus:

> [W]hen it comes to the Fourth Amendment, the home is first among equals. At the Amendment's "very core" stands "the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion."

Florida v. Jardines, 569 U.S. 1, 6, 133 S. Ct. 1409, 1414, 185 L. Ed. 2d 495 (2013) (quoting Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961)).

Indeed, these principles deeming the home first among equals under the Fourth Amendment and viewing warrantless searches as presumptively unreasonable have been expressly extended to the scenario presented in this case: the warrantless entry into a private person's home for the purpose of searching for a suspect who is not a resident in that home. For the past four decades it has been black letter law that in the absence of either consent or some exigent circumstance, the Fourth Amendment forbids warrantless entry into a third party's home to search for a fugitive who is not a resident at that home. Steagald v. United States, 451 U.S. 204, 216, 101 S. Ct. 1642, 1650, 68 L. Ed. 2d 38 (1981).

Applying these principles in the instant case, to the extent that this complaint lodges Fourth Amendment illegal search and related trespass claims against the defendants, it is clear from the well-pleaded facts in this case that police did not have a warrant when they entered the Velardos' home in the early morning hours of September 28, 2016. Nor did they have consent to search, since the complaint alleges that Yanira Velardo vociferously objected to the police presence inside her home at 2:00 a.m., and demanded that the police produce what the Fourth Amendment requires—a warrant. Thus, the only means by which the defendants can defeat this particular claim is if they can show that the warrantless entry was justified by some exigency.

This is the path that the defense chooses to follow in their motion to dismiss, arguing that exigency existed here which defeats this complaint as a matter of law. The difficulty with this proposition is twofold, however. First, it conflicts with the basic tenet of civil procedure that, when considering a motion to dismiss, our discretion is cabined by the well-pleaded facts set forth in the complaint; we must accept as true all allegations in the complaint, and all reasonable inferences that can be drawn from those well-pleaded facts, construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). In essence, the defendants' motion turns this proposition on its head and

would ask us to construe a set of facts in a light most favorable to them, and dismiss this lawsuit based upon their own favorable version of the facts. This we cannot do.

Second, this argument ignores the fundamentally fact-bound nature of any exigency inquiry under the Fourth Amendment. Simply put, such inquiries typically are not amenable to resolution as a matter of law on the pleadings alone. Rather:

> To determine whether a law enforcement officer faced an emergency that justified acting without a warrant, this Court looks to the totality of circumstances. See Brigham City v. Stuart, 547 U.S. 398, 406, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006) (finding officers' entry into a home to provide emergency assistance "plainly reasonable under the circumstances"); Illinois v. McArthur, 531 U.S. 326, 331, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001) (concluding that a warrantless seizure of a person to prevent him from returning to his trailer to destroy hidden contraband was reasonable "[i]n the circumstances of the case before us" due to exigency); Cupp, 412 U.S. at 296, 93 S.Ct. 2000 (holding that a limited warrantless search of a suspect's fingernails to preserve evidence that the suspect was trying to rub off was justified "[o]n the facts of this case"); see also Richards v. Wisconsin, 520 U.S. 385, 391–396, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997) (rejecting a *per se* exception to the knock-and-announce requirement for felony drug investigations based on presumed exigency, and requiring instead evaluation of police conduct "in a particular case"). We apply this "finely tuned approach" to Fourth Amendment reasonableness in this context because the police action at issue lacks "the traditional justification that ... a warrant ... provides." Atwater v. Lago Vista, 532 U.S. 318, 347, n. 16, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001). Absent that established justification, "the fact-specific nature of the reasonableness inquiry," Ohio v. Robinette, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996), demands that we evaluate each case of alleged exigency based "on its own facts and circumstances." Go–Bart Importing Co. v. United States, 282 U.S. 344, 357, 51 S.Ct. 153, 75 L.Ed. 374 (1931)

Missouri v. McNeely, 569 U.S. 141, 149–50, 133 S. Ct. 1552, 1559, 185 L. Ed. 2d 696 (2013).

In the instant case, the plaintiffs' complaint alleges that police conducted a warrantless entry into a private residence at 2:00 a.m., based upon a speculative— but incorrect—assumption that a man who was wanted for some offense might be located in the home. Police then forcibly restrained, arrested, and prosecuted the lawful occupants of this home when they resisted this invasion of their house. There is nothing in this factual recital which suggests that some urgent exigency existed which as a matter law justified foregoing the firmly rooted constitutional protections of the Fourth Amendment which clearly required a search warrant in this setting. Therefore, to the extent that the defendants rely upon claims of exigency to defeat these Fourth Amendment search and seizure claims, their motion to dismiss should be denied.

The defendants' motion to dismiss fares no better when it challenges the other Fourth Amendment claims presented by the plaintiffs. For example, similar considerations apply to the excessive force claims made by the Velardos in their complaint. An arrestee's excessive force claim, like the claims made here, are also judged against the Fourth Amendment's reasonableness standard, a constitutional benchmark which applies to local police through the Fourteenth Amendment. Thus,

"[A] free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person ... [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." <u>Graham v. Connor</u>, 490 U.S. 386, 388 (1986). Determining whether the force used to effect a seizure was reasonable under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion of the individual's Fourth Amendment interests" against the government's interests in effecting the seizure. <u>Id.</u> at 396. The test is one of reasonableness, and thus a "court must determine the objective 'reasonableness' of the challenged conduct, considering the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Couden v. Duffy</u>, 446 F.3d 483, 497 (3d Cir. 2006) (citation omitted); <u>see also</u> <u>Sharrar v. Felsing</u>, 128 F.3d 810, 822 (3d Cir. 1997). Included among the factors that may be relevant to this determination, courts may consider "the duration of the [officer's] action, whether the action takes place in the context of effectuating an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." <u>Id.</u> (internal quotations omitted). Courts are instructed that the surrounding events must be considered from "the perspective of a reasonable officer on the scene." <u>Id.</u>

<u>Samuels v. Pocono Mountain Reg'l Police Dep't</u>, No. 3:13-CV-2922, 2015 WL 10567834, at *3 (M.D. Pa. Dec. 17, 2015), <u>report and recommendation adopted in part</u>, No. 3:13-CV-02922, 2016 WL 1221831 (M.D. Pa. Mar. 29, 2016).

Analyzing this particular excessive force claim in light of the multi-facetted, and fact-specific, constitutional standard of reasonableness prescribed by the courts and the Fourth Amendment, we conclude that the plaintiffs have sufficiently pleaded Fourth Amendment excessive force claims to allow those claims to proceed past the pleading stage. Fairly construed, the complaint alleges that the police officers

unlawfully entered the plaintiffs' home at 2:00 a.m., and then forcibly subdued two women, throwing Yanira Velardo to the ground, putting a knee in her back, and arresting her inside the home. At this early stage of the proceedings, where we are limited to a consideration of the pleadings alone, we believe that the plaintiffs have adequately pleaded an excessive force claim. Instead, the ultimate question of the reasonableness of the use of force in this case turns on factual matters outside the pleadings. As such, this issue is not amenable to resolution through a motion to dismiss, where our judgment is cabined and confined by the well-pleaded facts in the complaint and the motion to dismiss these claims should also be denied.

Closely related to this excessive force claim is a failure to intervene claim brought by Velardo which alleges that the police officers who failed to intervene in this physical altercation which entailed excessive force are themselves civilly culpable for this failure to intervene. Courts recognize failure to intervene claims, albeit in a narrow set of circumstances. In order to sustain a failure to intervene claim, the plaintiffs must ultimately plead and prove three elements: "(1) the officer had a duty to intervene; (2) the officer had the opportunity to intervene; and (3) the officer failed to intervene." Ledcke v. Pennsylvania Dep't of Corr., No. 1:12-CV-1580, 2014 WL 12638878, at *6 (M.D. Pa. July 31, 2014) (quoting Smith v. Mensinger, 293 F.3d 641, 650-51 (3d Cir. 2002)), report and recommendation adopted, No. 1:12-CV-1580, 2014 WL 12639241 (M.D. Pa. Aug. 25, 2014). This is

an exacting burden of proof and persuasion, but like the defining issues which govern the underlying excessive force claim, the outcome of this failure to intervene claim is guided by an evaluation of factual matters outside the pleadings. Thus, in order to make a fully-informed decision regarding the viability of this failure to intervene claim, we would have to determine whether excessive force was used; whether the officers had an opportunity to intervene and prevent this use of force; and whether the officers failed to intervene. Because these are fact-bound determinations, they generally are not amenable to resolution on a motion to dismiss, but must await consideration of matters outside the pleadings, particularly when it is "allege[d] that the officers communicated and worked collectively during the use of force." Shuey v. Schwab, No. CIV.A. 3:08-CV-1190, 2010 WL 479938, at *5 (M.D. Pa. Feb. 4, 2010). In the instant case, fairly construed, the Velardos' complaint alleges that the defendant police officers acted collectively in entering her home, confronting the plaintiffs, and physically restraining them through what is alleged to have been the use of excessive force. Indeed, the complaint contains a conspiracy count which expressly alleges that the defendants engaged in collective, coordinated activities. These allegations of collective action by the officers are sufficient at the pleading stage of this litigation to state a failure to intervene claim and preclude dismissal of this claim as a matter of law on the pleadings alone.

In this case the plaintiffs further allege that the defendants violated their constitutional rights through their unlawful arrest and malicious prosecution of Yanira and Nakia Velardo. These claims also implicate the plaintiffs' rights under the Fourth Amendment to the United States Constitution since under the Fourth Amendment, an arrest without probable cause is a constitutional violation that may be redressed under 42 U.S.C. § 1983. See Walmsley v. Philadelphia, 872 F.2d 546, 551 (3d Cir. 1989) (citing Patzig v. O'Neill, 577 F.2d 841, 848 (3d Cir. 1978). However, in order to make out a false arrest claim, a plaintiff must demonstrate that police lacked probable cause to arrest. Groman v. Twp. of Manalpan, 47 F.3d 628, 634 (3d Cir. 1995). Similarly:

> To prove malicious prosecution under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) *the proceeding was initiated without probable cause*; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003) (emphasis added).

Thus, whether characterized as a false arrest, or couched in terms of malicious prosecution, proof that probable cause was lacking is essential to any § 1983 claim arising out of the arrest and prosecution of an individual. For purposes of the Fourth Amendment, probable cause to arrest exists "whenever reasonably trustworthy

information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." U.S. v. Myers, 308 F.3d 251, 255 (3d Cir. 2002) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). An arrest by a police officer without a warrant "is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004). In conducting an inquiry into whether probable cause to arrest existed, a court should consider the totality of the circumstances presented, and "must assess the knowledge and information which the officers possessed at the time of arrest, coupled with the factual occurrences immediately precipitating the arrest." United States v. Stubbs, 281 F.3d 109, 122 (3d Cir. 2002).

Although "[t]he probable-cause standard is incapable of precise definition or quantification," Maryland v. Pringle, 540 U.S. 366, 371 (2003), all interpretations of probable cause require "a belief of guilt that is reasonable as opposed to certain." Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005) (citing Hill v. California, 401 U.S. 797, 804 (1971)). Probable cause "does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." Wright, 409 F.3d at 602 (quoting Adams v. Williams, 407 U.S. 143, 149 (1972)). Accordingly, the evidentiary standard for probable cause is

significantly lower than that required for conviction. Id. (citing Michigan v. DeFillippo, 443 U.S. 31, 36 (1979)); see also Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000) (holding that probable cause requires only a "fair probability" that a person committed the relevant crime). Because an arrest is made with probable cause if at the moment it was made the facts and circumstances within the officer's knowledge "were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense," Beck v. Ohio, 379 U.S. 89, 91 (1964), the constitutional validity of an arrest does not turn on whether the suspect *actually* committed any crime, Johnson v. Campbell, 332 F.3d 199, 211 (3d Cir. 2003). Thus, "[t]he determination that probable cause exists is fundamentally a factual analysis that must be performed by officers at the scene.  It is the function of the court to determine whether the objective facts available to the officers at the time of arrest were sufficient to justify a reasonable belief that an offense was being committed." United States v. Glasser, 750 F.2d 1197, 1206 (3d Cir. 1984).

In short, given the fact-bound nature of any probable cause determination, the plaintiffs' allegations regarding the unjustified nature of these arrests, and the ultimate rejection of these criminal charges on their merits in state court, it cannot be said at the outset of this litigation that these false arrest claims fail as a matter of law. Therefore, the motion to dismiss these claims should be denied without prejudice to renewal upon a more fulsome factual record.

The defendant police officers advance one further argument in support of their motion to dismiss the plaintiffs' malicious prosecution claim, arguing that such a claim cannot lie against the police officers because it is prosecutors, and not police, who make charging decisions. While this may be true as a general proposition, it is also well-settled that:

> Police officers (as opposed to prosecutors) may be liable for malicious prosecution if they "conceal or misrepresent material facts" to the prosecutor. <u>Halsey</u>, 750 F.3d at 297 (quoting <u>Pierce v. Gilchrist</u>, 359 F.3d 1279, 1292 (10th Cir. 2004)). In particular, an officer is liable if he "fails to disclose exculpatory evidence to prosecutors, makes false or misleading reports to the prosecutor, omits material information from the reports, or otherwise interferes with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute."

<u>Thomas v. City of Philadelphia</u>, 290 F. Supp. 3d 371, 379 (E.D. Pa. 2018) (quoting <u>Finnemen v. SEPTA</u>, 267 F. Supp. 3d 639 (E.D. Pa. 2017)).

In this case, with the scope of our review limited solely to the complaint itself, we believe that this pleading sufficiently alleges that the police officers entered the Velardos' residence in contravention of the Fourth Amendment, became involved in an altercation with the plaintiffs when they asserted their Fourth Amendment rights, and then initially and unilaterally arrested and charged the plaintiffs with obstruction of justice for conduct which may have consisted of nothing more than the attempted assertion of constitutional rights. This course of conduct, if proven, may sufficiently establish that the officers' actions interfered with the ability of prosecutors to exercise their independent judgment to prosecute to justify a malicious prosecution

charge. At a minimum, resolution of this question entails some consideration of the facts surrounding the underlying state criminal case, and the degree of information shared by police with prosecutors. Such an inquiry cannot be made through a motion to dismiss, but must await the development of the factual record, a task that is more appropriately undertaken through a motion for summary judgment.

### 4.    Qualified Immunity Is Not Appropriate at this Juncture

In addition, the defendants argue in this motion to dismiss that they are entitled to qualified immunity from damages. The defense of qualified immunity shields government officials from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Mullenix v. Luna, —— U.S. ——, 136 S. Ct. 305, 308 (2015). A qualified immunity analysis entails two inquiries—whether the plaintiff has alleged a violation of a constitutional right, and whether that right was "clearly established" at the time of the defendants' alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 232 (2009). In conducting this analysis, a court must inquire "into the reasonableness of the official action," Anderson v. Creighton, 483 U.S. 635, 641 (1987), as qualified immunity "protect[s] all but the plainly incompetent and those who knowingly violate the law." Kelly v. Borough of Carlisle, 622 F.3d 248, 254 (3d Cir. 2010). However, the existence of factual disputes, supported by evidence in the record, may render qualified immunity unavailable in some cases. Thus,

"although qualified immunity is a question of law determined by the court, when qualified immunity depends on disputed issues of material fact, those issues must be determined by the jury." Monteiro, 436 F.3d at 405; see also Johnson v. Jones, 515 U.S. 304, 313 (1995) (qualified immunity may turn on disputed issues of fact); Karnes v. Skrutski, 62 F.3d 485, 491 (3d Cir. 1995) ("While the qualified immunity defense is frequently determined by courts as a matter of law, a jury should decide disputed factual issues relevant to that determination").

When we consider the first benchmark standard we must address when evaluating a qualified immunity defense, the question of whether the plaintiffs' Fourth Amendment rights were clearly established, we are constrained to observe that many of the guiding Fourth Amendment principles that apply to this case have long been settled and were clearly established in 2016 when this incident took place. For example, for nearly 40 years it has been clearly established that in the absence of either consent or some exigent circumstances, the Fourth Amendment forbids warrantless entry into a third party's home to search for a fugitive who is not a resident at that home. Steagald v. United States, 451 U.S. 204, 216, 101 S. Ct. 1642, 1650, 68 L. Ed. 2d 38 (1981). Likewise, the prohibition on the use of excessive force to make an arrest and the necessity that police possess probable cause before arresting a suspect are longstanding and settled tenets of Fourth Amendment jurisprudence. Graham v. Connor, 490 U.S. 386, 388 (1986).

Moreover, to the extent that the defendants seek qualified immunity based upon their assertions that some exigency existed which justified foregoing a warrant; that their use of force was reasonable under the circumstances; or that there was probable cause to arrest the plaintiffs, each of these defenses rest on what are currently contested factual averments, and it is clear that "when qualified immunity depends on disputed issues of material fact, those issues must be determined by the jury." Monteiro, 436 F.3d at 405. Accordingly, we may not resolve these issues of qualified immunity at this stage of the litigation, where the applicable law is clear but the facts are in dispute. Instead, the resolution of these matters must await another day, and some other proceeding in the nature of a trial or summary judgment motion.

**5.    The Plaintiffs' Claim of Intentional Infliction of Emotional Distress May Not Be Summarily Dismissed**

Finally, the defendants seek the dismissal of the plaintiffs' intentional infliction of emotional distress claims; claims which are premised upon what the plaintiffs allege was their unjustified and unwarranted criminal prosecution at the hands of the defendants. Such claims are judged by exacting legal standards. Under Pennsylvania law, the elements of a claim for intentional infliction of emotional distress are as follows: "(1) the conduct [of the defendant] must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; [and] (4) that distress must be severe." Hoy v. Angelone, 691 A.2d 476, 482

(Pa. Super. Ct. 1997). This claim also requires an allegation of some type of physical injury, harm, or illness related to the distress. <u>Robinson v. Family Dollar, Inc.</u>, No. 14-3189, 2015 WL 3400836 (E.D. Pa. May 27, 2015) (citing <u>Corbett v. Morgenstern</u>, 934 F. Supp. 680, 684 (E.D. Pa. 1994)). It is difficult to make out a cognizable claim for intentional infliction of emotional distress, in no small part because "the conduct must be 'so extreme in nature as to go beyond all possible bounds of decency such that it would be regarded as utterly intolerable to civilized society.' " <u>Regan v. Twp. of Lower Merion</u>, 36 F. Supp. 2d 245, 251 (E.D. Pa. 1999).

Thus, with respect to claims for intentional infliction of emotional distress, "courts have been chary to allow recovery for a claim of intentional infliction of emotional distress. Only if conduct which is extreme or clearly outrageous is established will a claim be proven." <u>Hoy v. Angelone</u>, 720 A.2d 745, 753-54 (Pa. 1998). Indeed, the Restatement (Second) of Torts instructs that "[i]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that this conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." Restatement (Second) of Torts § 46, comment d; <u>Hoy</u>, 720 A.2d at 754. In keeping with these restrictive standards, the Pennsylvania Supreme Court has provided examples of conduct found to state a

claim for intentional infliction of emotional distress, and such examples demonstrate the extraordinary nature of the theory:

> Cases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have had presented only the most egregious conduct. See e.g., Papieves v. Lawrence, 437 Pa. 373, 263 A.2d 118 (1970)(defendant, after striking and killing plaintiff's son with automobile, and after failing to notify authorities or seek medical assistance, buried body in a field where discovered two months later and returned to parents (recognizing but not adopting section 46)); Banyas v. Lower Bucks Hospital, 293 Pa.Super. 122, 437 A.2d 1236 (1981)(defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide); Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265 (3d. Cir. 1979) (defendant's team physician released to press information that plaintiff was suffering from fatal disease, when physician knew such information was false).

Hoy, 720 A.2d at 754.

Applying these very exacting benchmarks, federal and state courts in Pennsylvania have reached contrasting, and somewhat irreconcilable results when considering the question of whether a false claim of criminal conduct is sufficiently outrageous to constitute intentional infliction of emotional distress. A number of courts have concluded that false allegations of criminal conduct simply are not sufficiently extreme to give rise to tort liability for intentional infliction of emotional distress. See Motheral v. Burkhart, 400 Pa. Super. 408, 583 A.2d 1180 (Pa. Super 1990) (holding that a claim of intentional infliction of emotional distress would not lie where defendant allegedly lied to police and by doing so had plaintiff arrested and detained); McClain v. Munn, No. CIV.A. 06-278, 2008 WL 975059, at *6 (W.D.

Pa. Apr. 9, 2008); <u>Simmons v. Poltrone</u>, No. CIV.A. 96-8659, 1997 WL 805093, at *4 (E.D. Pa. Dec. 17, 1997); <u>Mastromatteo v. Simock</u>, 866 F. Supp. 853, 859 (E.D. Pa. 1994) (holding that allegations that a police officer manufactured facts to support probable cause for an arrest warrant resulting in detention of plaintiff did not state a claim for intentional infliction of emotional distress); <u>Denenberg v. American Family Corp. of Columbus</u>, 566 F.Supp. 1242 (E.D. Pa. 1983) (finding claim was not stated where defendant allegedly falsely instituted civil lawsuits against plaintiff).

In contrast, other courts have held that in some instances, intentional false allegations of criminal wrongdoing, if acted upon by the authorities to the detriment of a plaintiff, will support a claim of intentional infliction of emotional distress. <u>Banyas v. Lower Bucks Hospital</u>, 293 Pa. Super. 122, 437 A.2d 1236 (1981) (defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide); <u>Watson v. Haverford Twp. Police Dep't</u>, No. CIV.A. 10-6731, 2011 WL 2200306, at *5 (E.D. Pa. June 6, 2011); <u>Watson v. Abington Twp.</u>, No. CIV.A.01–5501, 2002 WL 32351171, at *1, *9 (E.D. Pa. Aug. 15, 2002) (denying dismissal of plaintiffs' claim where defendant police officers falsely arrested one plaintiff, drove another out of business, and arrested and seized items from a third plaintiff using a search warrant they knew to be false); <u>Gilbert v. Feld</u>, 788 F.Supp. 854, 857 (E.D. Pa. 1992) (holding that claim had been

stated where defendants were alleged to have "procured the institution of criminal charges against [plaintiff] by providing false and misleading information to and by concealing information from" the district attorney's office).

While these contrasting results are not readily reconcilable, the outcomes of these cases are frequently fact-specific. Further, among the factual considerations that appear to influence the courts' judgment in this regard are the gravity of the criminal accusation; the severity of the collateral consequences which flow from the false accusation; whether the person making the accusation is able to procure some official action against the plaintiff by the authorities based upon the false accusation; and the extent to which the authorities are affirmatively misled by the accuser's false statements. <u>Id.</u> In this case, the plaintiffs allege facts which suggest that some of these aggravating factors may be present. Recognizing the fact-specific nature of these claims, at the pleading stage we believe that the plaintiffs have asserted sufficient well-pleaded facts for this claim to proceed forward, subject to a later assessment of whether the undisputed material facts will support this claim under the highly exacting legal benchmarks set by Pennsylvania law.

## IV.    <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED THAT the defendant's motion to dismiss the plaintiffs' complaint (Doc. 10) be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 22d day of August 2019.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge